IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Lester M. Dean, Jr.,**

   **Plaintiff,**

**v.**                 Case No. 04-2100-JWL

**Edward C. Gillette and**
**H. Vincent Monslow,**

   **Defendants.**

## MEMORANDUM & ORDER

Plaintiff filed suit against defendants under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. This matter is presently before the court on plaintiff's motion to alter or amend the court's order granting summary judgment in favor of both defendants and awarding attorneys' fees to defendant H. Vincent Monslow; defendant Edward C. Gillette's motion for attorneys' fees; and Mr. Monslow's supplemental submission in support of his fee award. As explained below, plaintiff's motion to alter or amend is denied; Mr. Gillette's motion for fees is denied; and the court awards Mr. Monslow $42,166.47 for attorneys' fees incurred in connection with defending plaintiff's claim against him.

**I. Background**

Plaintiff Lester Dean is the sole owner and managing member of Glacier Development Company ("Glacier"). Glacier buys and develops commercial and residential real estate. In 2001, defendant H. Vincent Monslow, an attorney, began providing legal services to plaintiff and Glacier

in connection with an application for a special use permit that plaintiff and Glacier filed with the Unified Government of Wyandotte County/Kansas City, Kansas in July 2001. The application for a special use permit related to plans of plaintiff and Glacier to develop certain property owned by Glacier in Kansas City, Kansas. The application indicates that the Glacier property was zoned as "Heavy Industrial" and described the proposed use of the property as follows: "A diversion bypass channel to direct flood water into Turkey Creek together with a certified earthen compacted fill to accommodate high-flex commercial structures." Glacier's ultimate goal was to construct 400,000 square feet of "high-flex commercial buildings" on the property. Mr. Monslow continued to provide legal services to plaintiff and Glacier throughout 2002 and 2003. These services included working on an appeal from the denial of the special use permit and assisting plaintiff and Glacier in condemnation proceedings initiated by the State of Kansas with respect to the Glacier property in Kansas City, Kansas.

In early 2004, Mr. Monslow formally ceased his representation of plaintiff and Glacier after they refused to pay Mr. Monslow certain legal fees that Mr. Monslow asserts he was owed for work performed in connection with the application for special use permit and the condemnation proceedings. On February 18, 2004, Mr. Monslow filed suit against plaintiff and Glacier in Kansas state court seeking to recover legal fees for the services he provided to plaintiff and Glacier. Defendant Edward Gillette, an attorney, represents Mr. Monslow in the underlying state court action. Shortly after Mr. Monslow filed his action against plaintiff and Glacier, plaintiff filed this suit alleging that Mr. Monslow and Mr. Gillette violated the FDCPA in various respects in attempting to recover the legal fees allegedly owed to Mr. Monslow.

2

Both defendants filed motions for summary judgment and, in April 2005, the court granted those motions. With respect to plaintiff's FDCPA claim against Mr. Monslow, the court reasoned that Mr. Monslow was not a "debt collector" as that phrase is defined in the FDCPA. Specifically, the court held that Mr. Monslow is not attempting to collect a debt "owed or due another" because he is attempting to collect fees asserted to be owed to him. *See* 15 U.S.C. § 1692a(6) (defining a "debt collector" as a "person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."). To the extent Mr. Monslow is attempting to collect fees asserted to be owed to his law firm, Monslow & Associates, P.C., the court concluded that he is still not a "debt collector" within the meaning of the FDCPA as the statute expressly excludes from the definition of a "debt collector" any "officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A).

With respect to plaintiff's FDCPA claim against Mr. Gillette, the court held that the debt at issue was not incurred "for personal, family or household purposes" as required by the FDCPA, *see* 15 U.S.C. § 1692a(5) (the FDCPA applies only to an obligation to pay money "arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes"), because the legal services provided to plaintiff were provided for the purpose of assisting plaintiff with various commercial endeavors, including the development of certain property for commercial buildings. The FDCPA, then, simply did not apply to plaintiff's debt and the court dismissed plaintiff's claim as to Mr. Gillette for this reason.

3

Finally, the court concluded that plaintiff brought this action against Mr. Monslow in bad faith and for the purpose of harassment and, thus, granted Mr. Monslow's request for an award of fees. *See* 15 U.S.C. § 1692k(a)(3).

## II. Plaintiff's Motion to Alter or Amend

Pursuant to Federal Rule of Civil Procedure 59(e), plaintiff moves the court to reconsider its order alter or amend its order granting summary judgment in favor of defendants and awarding fees to Mr. Monslow. Relief under Rule 59(e) is warranted based on an intervening change in the controlling law, new evidence previously unavailable, and the need to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.,* 57 F.3d 941, 948 (10th Cir. 1995)). Thus, a Rule 59(e) motion is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *Id*. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing. *Id.* (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)).

Plaintiff asserts that the court has misapprehended the facts and his legal argument. With respect to his claim against Mr. Monslow, plaintiff challenges the court's conclusion, a conclusion based on 15 U.S.C. § 1692a(6)(A) (excluding from the definition of a "debt collector" any "officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor"), that Mr. Monslow is not a "debt collector" when attempting to collect a debt owed to his law firm. According to plaintiff, Mr. Monslow was not seeking to recover the debt "in the name of the

4

creditor" because he sent a demand letter to plaintiff on stationery bearing Mr. Monslow's personal letterhead as opposed to his law firm's letterhead and the letter made no reference whatsoever to Mr. Monslow's law firm.

The court rejects this argument and reiterates its conclusion that Mr. Monslow is an officer of Monslow & Associates, P.C., is collecting a debt in the name of his law firm and, thus, is not a debt collector for purposes of the FDCPA. As the court noted in its previous order, Monslow & Associates is a Missouri professional corporation and Mr. Monslow is the president and sole shareholder of the firm. Under Missouri law, then, Mr. Monslow and his law firm, at least for purposes of the attorney-client relationship with plaintiff, are essentially alter egos of each other. *See Jo B. Gardner, Inc. v. Beanland*, 611 S.W.2d 317 (Mo. App. 1980) (lawyer and sole shareholder of professional corporation was the alter ego of the professional corporation for purposes of attorney-client relationship). Thus, the fact that Mr. Monslow's demand letter was sent on personal stationery is of no consequence given the relationship between Mr. Monslow and his firm. Moreover, the legislative history of the FDCPA clearly reflects that the Act was intended to cover "third persons" and "independent debt collectors" who regularly collect debts for others. *See* 1977 U.S.C.C.A.N. 1695, 1697. It is undisputed that Mr. Monslow is the individual who performed legal services for plaintiff and that the billing for such work flowed through Mr. Monslow. Without question, then, Mr. Monslow cannot be considered a "third person" in relation to Monslow & Associates and he cannot be considered "independent" of that firm. As he is not a debt collector for purposes of the statute, summary judgment was and remains appropriate in favor of Mr. Monslow.

5

With respect to his claim against Mr. Gillette, plaintiff asserts that the debt, contrary to the court's conclusion, was incurred for "personal purposes" because the underlying state court action filed by Mr. Monslow was filed against plaintiff personally as well as against Glacier. However, the mere fact that Mr. Monslow sought to recover the debt from plaintiff personally has no bearing on the nature of the transaction underlying the debt and plaintiff directs the court to no authority supporting his argument. As the court explained in its previous order, the FDCPA applies only to an obligation to pay money "arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *See* 15 U.S.C. § 1692a(5). The relevant transaction in this case was the provision of legal services to plaintiff. Those legal services were provided for the purpose of assisting plaintiff with various commercial endeavors, including the development of certain property for commercial buildings. Plaintiff does not contend that the legal services were provided for a personal purpose. The FDCPA, then, does not apply to his claim.

Finally, plaintiff asserts that while the debt was "originally" incurred for commercial purposes, it was "transformed" into a debt incurred for "personal" purposes by virtue of the fact that Mr. Monslow, in attempting to collect the debt, allegedly physically threatened plaintiff. In support of his argument, plaintiff relies on *Moore v. Principle Credit Corp.*, 1998 WL 378387 (N.D. Miss. Mar. 31, 1998). In *Moore*, the district court denied the defendants' motion to dismiss the plaintiffs' FDCPA claim, asserting that even if the debt was incurred for business purposes, the debt "became" a debt incurred for personal purposes once the defendants began placing abusive and harassing phone calls to the plaintiffs at their home. *See id.* at *2. The court declines to

follow the reasoning of *Moore*. As the Ninth Circuit explained when faced with the same argument advanced by plaintiff here,

> The logic in *Moore* is antithetical to the tenets of the FDCPA. As one court noted in rejecting the holding in *Moore*, "if a communication to the debtor's home converted any commercial debt into an obligation under the FDCPA, it would be tantamount to an amendment of the clear intent of Congress." *Holman v. West Valley Collection Services, Inc.*, 60 F. Supp. 2d 935, 936-37 (D. Minn. 1999). We, too, refuse to ignore Congress's intent by defining a consumer debt in accordance with the actions of the debt collector, rather than the true nature of the debt. *See* 15 U.S.C. § 1692a(5). Accordingly, we decline [plaintiff's] invitation to adopt the questionable precedent established in *Moore*.

*Slenk v. Transworld Systems, Inc.*, 236 F.3d 1072, 1076 (9th Cir. 2001). The court is persuaded that the Ninth Circuit's resolution of this issue is the proper one.

For the foregoing reasons, plaintiff's motion to alter or amend is denied.

### III.   Mr. Gillette's Motion for an Award of Attorneys' Fees

Mr. Gillette, pursuant to 15 U.S.C. § 1692k(a)(3), requests that the court award him reasonable attorney's fees for work expended and costs incurred in connection with this lawsuit. Specifically, Mr. Gillette requests an award of fees in the amount of $64, 152. Regardless of whether Mr. Gillette would be entitled to an award under section 1692k(a)(3), the court denies Mr. Gillette's motion because he has failed to submit to the court any billing records whatsoever. In the absence of any time records, the court cannot determine the reasonableness of Mr. Gillette's request. The motion, then, is denied in its entirety. *See Case v. United Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998) ("Counsel for the party claiming fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal,

for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."); *see also Anderson v. Secretary of Health & Human Servs.*, 80 F.3d 1500, 1506 (10th Cir. 1996) (district court may totally deny fee request when no contemporaneous records were kept).

### IV.    Mr. Monslow's Supplemental Submission in Support of Fee Award

In his supplemental submission regarding the award of fees, Mr. Monslow requests fees, costs and expenses in the amount of $42,166.47. The proper procedure for determining a reasonable attorneys' fee is to arrive at a lodestar figure by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate. *See Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005) (citing *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998)). In his response to Mr. Monslow's submission, plaintiff does not challenge the reasonableness of the hours spent by Mr. Monslow's counsel or his support staff. Thus, the court has reviewed the billing records submitted by Mr. Monslow only to ensure that those records are sufficient to meet Mr. Monslow's burden under the Tenth Circuit's decision in *Case* of proving the number of hours reasonably spent on the litigation by submitting meticulous, contemporaneous time records showing all hours for which compensation is sought and reflecting the specific tasks associated with those hours. The court readily concludes that the records submitted by Mr. Monslow satisfy this burden and, thus, the court need not address any further the reasonableness of the hours spent. *See Public Serv. Co. of Colorado v. Continental Casualty Co.*, 26 F.3d 1508, 1521 (10th Cir. 1994) (district court is not obligated to comb attorney billing

records to ferret out gaps or inconsistencies; if opposing party believes evidence supporting fee request is deficient, that party must bring the matter to the attention of the district court); *see also United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533, 1549 (10th Cir. 1987) ("[T]he trial court is not responsible for independently calculating a 'reasonable' fee.").

The court turns, then, to the hourly rates sought by Mr. Monslow for his counsel and support staff. The fee amount requested by Mr. Monslow is based on an hourly rate of $190.00 for lead counsel Kip Richards and Karen Renwick; $135.00 for associate Matthew Crimmins.[1] Mr. Monslow has submitted affidavits reflecting that these rates are reasonable in light of the respective education, experience and skill of the lawyers and that the rates are in accord with the prevailing market rates for similar work in the community. According to plaintiff, these rates are excessive and must be reduced. Plaintiff submits no affidavits suggesting that the rates requested by Mr. Monslow are unreasonable. Rather, plaintiff relies on a decision from Judge Vratil of this district in which Judge Vratil concluded that a reasonable hourly rate for experienced lead counsel in a civil rights case was $180.00 and that a reasonable hourly rate for an associate on the case with 6 years experience was $140.00. According to plaintiff, lead counsel and the associate in Judge Vratil's case both have considerably more experience than lead counsel and the associate in this case.

As the Tenth Circuit has cautioned, however, a district court abuses its discretion when it

---

[1] The fee request is also based on hourly rates of $80.00 and $75.00 for various legal assistants. Plaintiff does not challenge the rates of support staff, however.

ignores the parties' market evidence and sets an attorney's hourly rate using the rates it consistently grants. *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) (citing Case, 157 F.3d at 1255). The court, then, will not ignore the substantial market evidence submitted by Mr. Monslow simply because Judge Vratil utilized different hourly rates in another case. The proper focus is the prevailing market rate in the relevant community, *see id.*, and Mr. Monslow has submitted ample evidence that the hourly rates he seeks are in line with the prevailing market rates in this community. By contrast, plaintiff has submitted no evidence whatsoever concerning prevailing market rates. Plaintiff's request, then, that the court reduce the hourly rates sought by Mr. Monslow is denied.[2]

For the foregoing reasons, Mr. Monslow's fee request is granted in its entirety and he is entitled to an award of $42,166.47 for attorneys' fees incurred in connection with defending plaintiff's claim against him.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion to alter or amend (doc. #138) is **denied** and defendant Edward C. Gillette's motion for attorneys' fees (doc. #137) is **denied**.

---

[2] While plaintiff does not raise the issue, the court notes that the hourly rates sought by Mr. Monslow are higher than the rates he was actually charged by his counsel, who offered Mr. Monslow a reduced hourly rate as a professional accommodation. The agreement between Mr. Monslow and his counsel does not alter the court's finding in this case. *See Cadle Co., II, Inc., v. Chasteen*, 1993 WL 96886, at *1-2 (10th Cir. Mar. 29, 1993) (no abuse of discretion in awarding reasonable attorneys' fees based on reasonable hourly rate rather than reduced hourly rate that counsel actually charged to client; key factor is prevailing market rate).

**IT IS FURTHER ORDERED BY THE COURT** that Mr. Monslow is awarded $42,166.47 for attorneys' fees incurred in connection with defending plaintiff's claim against him.

**IT IS SO ORDERED.**

Dated this 11th day of July, 2005, at Kansas City, Kansas.

                                                s/ John W. Lungstrum
                                                John W. Lungstrum
                                                United States District Judge